## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 27 2015, 9:21 am

Kevin S. Smith

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Michael B. Troemel
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

Abigail R. Miller
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of G.F. (Minor Child), a Child in Need of Services,

S.F. (Father)

*Appellant-Defendant,*

v.

Indiana Department of Child Services,

*Appellee-Plaintiff*

January 27, 2015

Court of Appeals Cause No. 79A02-1405-JC-373

Appeal from the Tippecanoe Superior Court

The Honorable Faith Graham, Judge
The Honorable Crystal Sanders, Magistrate

Cause No. 79D03-1402-JC-35

**Vaidik, Chief Judge.**

# Case Summary

[1]     S.F. ("Father") appeals the trial court's determination that his son G.F. is a child in need of services (CHINS).  Father contends that there is insufficient evidence to support the trial court's CHINS determination.  Because we find the evidence sufficient, we affirm.

# Facts and Procedural History

[2]     A.S. ("Mother")[1] has three children: G.F., born in October 2011; S.S., born in February 2013; and B.W., born in February 2014.  Father is the biological father of G.F. and S.S.[2]  In January 2014, S.S. was adjudicated a CHINS after she tested positive for methamphetamine at eight months old.  At that time, Mother and Father were not living together, and S.S. lived with Mother in Indiana.  G.F., who lived with Father in Illinois, was not involved in the CHINS action.  However, during S.S.'s CHINS proceedings, the trial court warned Father to be vigilant about leaving G.F. in Mother's care.

---

1 Mother does not participate in this appeal.

2 S.S. is not at issue in this appeal.  B.W., G.F.'s half-sister, is also not at issue in this appeal.  We discuss the welfare of S.S. and B.W. only where it is relevant to this case.

[3]     One month later, Mother tested positive for the synthetic drug spice.  The Tippecanoe County Department of Child Services (TCDCS) removed all three children from Mother's care—including G.F., whom Father had left in Indiana with Mother—and filed a petition alleging that G.F. and B.W. were CHINS. TCDCS did not consider placing G.F. with Father because "there was a question [about his] judgment in allowing [G.F.] to return [to Mother] knowing [that] [S.S.] was [involved] in the [CHINS] case."  Tr. p. 28.  G.F. was placed in foster care.

[4]     Father, who was still living in Illinois, sought custody of G.F.  By agreement of the parties, the trial court ordered TCDCS to begin the process of investigating out-of-state placement with Father via the Interstate Compact on the Placement of Children (ICPC).  *See* Appellant's App. p. 39 ("[B]y agreement of the parties, Court ORDERS DCS to begin an ICPC with the State of Illinois regarding possible placement of [G.F.] in [] Father's care.").  The court ordered TCDCS to conduct a home study and indicated that it would rule on the issue of G.F.'s placement when the home study was complete.  *Id.* at 46.

[5]     The court held two evidentiary hearings on the CHINS petition in April 2014. At the hearings, TCDCS caseworkers expressed concern about Father's ability to parent G.F. because of his criminal history, lack of employment, and inability to drive.  *See* Tr. p. 52 ("[T]here's no employment, he has no transportation . . . ."), 68 ("[H]e has no job . . . I'm not really sure how he has means to support [G.F.] . . . . And the fact that he's still on probation . . . ."). Father has numerous criminal convictions, including a felony conviction for

aggravated battery and three convictions for driving while intoxicated, and he was on probation at the time of the hearings. *Id.* at 68, 104. As a result of his convictions, Father had no driver's license and struggled to find employment. *Id.* at 88-89. During one period of incarceration in 2013, G.F. lived with Father's stepmother for three months because Father could not care for him. *Id.* at 107. At the time of the hearings, Father had additional criminal charges pending against him. *Id.* at 89, 105.

[6] Caseworkers also expressed concern about Father's judgment—specifically, his decision to expose G.F. to Mother's boyfriend. During S.S.'s CHINS proceedings, Father was told that Mother's boyfriend was not to have contact with G.F. until he passed background checks and drug screens. *See id.* at 85, 113 (TCDCS caseworker: "[W]e would not have given, nor did we give [Father] permission to have [G.F.] around [Mother] with [Mother's boyfriend]."). Caseworkers presented evidence that Mother's boyfriend had a criminal history, including convictions for arson and theft, and had recently tested positive for the synthetic drug spice. *Id.* at 27, 34, 39-40. Despite this, Father had allowed G.F. to stay with Mother and Mother's boyfriend while Father returned to Illinois.

[7] At the conclusion of the second hearing, the trial court found that G.F. and B.W. were CHINS. With respect to G.F., the court stated:

> [T]here are issues with regard to [Father] concerning the criminal history that he testified to, I have great concerns about the . . . battery. I think it causes great questions about where [G.F.] was when all this was occurring and is certainly very relevant to that. You may have

had the child with grandma, but you know typically you don't leave the child at grandma's house and go end up in jail and not retrieve your child. Those are all concerns that I have. What if you had left the child with someone other than grandma and didn't return? Those are all concerns. In addition, I very clearly told you that [G.F.] could have visitation with Mother, but that you were to be very, very – I told you that . . . you were to be very vigilant. Do you recall that conversation? You had to be the one responsible for knowing [Mother's] circumstances and what was going on that you couldn't just drop [G.F.] off and assume everything was going to be okay and that's not what occurred, okay? Certainly, with regard to the ICPC we're going to wait on the results of that . . . just because [G.F.'s] a CHINS doesn't mean he can't stay in your home while this is going on. I'm going to wait and see what the results of the ICPC are before I make that decision.

*Id.* at 161-62.

[8] The court later entered an order formalizing the CHINS adjudication and continuing G.F.'s foster-care placement. In the order, the trial court again expressed concern about Father's judgment, as well as his lack of employment. *See* Appellant's App. p. 50-52. Father now appeals.

# Discussion and Decision

[9] Father appeals the trial court's determination that G.F. is a CHINS. When reviewing a trial court's determination that a child is in need of services, we do not reweigh the evidence or judge witness credibility. *In re S.D.*, 2 N.E.3d 1283, 1286-87 (Ind. 2014) (citations omitted), *reh'g denied.* We consider only the evidence that supports the trial court's decision and the reasonable inferences drawn therefrom. *Id.* at 1287 (citations omitted).

In this case, the trial court entered abbreviated findings and conclusions sua sponte. "As to the issues covered by the findings, we apply the two-tiered standard of whether the evidence supports the findings, and whether the findings support the judgment." *Id*. (citing *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997)). We review the remaining issues under the general-judgment standard, meaning that we will affirm if the judgment can be sustained on any legal theory supported by the evidence. *Id.*

A CHINS adjudication under Indiana Code section 31-34-1-1 requires three elements: the parent's actions or inactions have seriously endangered the child, the child's needs are unmet, and the child's needs are unlikely to be met without State coercion. *Id.* In full, Section 31-34-1-1 provides:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>
> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
>> (A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.[3]

[12] We conclude that the evidence is sufficient to support the trial court's determination that G.F. is a CHINS. In its written order, the trial court expressed concern about Father's judgment and his lack of employment. *See* Appellant's App. p. 50-52. Specifically, the court questioned Father's decision to leave G.F. in Mother's care and return to Illinois while Mother was using drugs, particularly after the court warned Father to be vigilant about G.F.'s care. As the court also found, Father knew that Mother's boyfriend was not to have contact with G.F. until he passed background checks and drug screens, but Father left G.F. with Mother and Mother's boyfriend before this occurred. Moreover, at the hearings, despite evidence that Mother's boyfriend has a criminal history and had recently used spice, Father continued to claim that Mother's boyfriend was a good influence and should be able to spend time with G.F.

[13] On appeal, Father argues that he should not be penalized for failing to heed the trial court's warning to be vigilant about G.F.'s care because S.S.'s paternity had not been established when the court said this. *See* Appellant's Br. p. 9

---

3 Father challenges the trial court's determination regarding Section 31-34-1-1(1) only; he does not challenge the trial court's finding that G.F. needs care, treatment, or rehabilitation that he is not receiving and is unlikely to be provided or accepted without the coercive intervention of the court.

("There was a discussion between [Father] and the court at which time [F]ather was not a party . . . .This court is asked to note that . . . without first establishing paternity, the [] court was without jurisdiction to enter a parental participation decree against a father."). But a parental-participation order is not at issue here; the trial court merely advised Father in open court to be careful about allowing G.F. to spend time with Mother in light of what had occurred with S.S. Father also claims that he had a different understanding of his responsibilities regarding G.F.'s supervision. *See id.* at 8-11 ("Father submits that . . . he was [] left with the impression that he was allowed to send G.F. to some visitation with [] [M]other without subjecting G.F. to a CHINS petition."). This argument is a request to reweigh the evidence, which we will not do. We conclude that the trial court did not err in adjudicating G.F. a CHINS.[4]

Affirmed.

Baker, J. and Riley, J., concur.

---

4 Father also argues that that the ICPC does not apply to him because he is G.F.'s parent; thus, the trial court erred in initiating the ICPC process. But Father has waived this argument because the record shows that he agreed to begin the ICPC process. *See* Appellant's App. p. 39 ("[B]y agreement of the parties, Court ORDERS [TC]DCS to begin an ICPC with the State of Illinois regarding possible placement of [G.F.] in [] Father's care."). We therefore do not address this argument.